NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNA M. RUIZ, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY <br><br> Defendant. | Civil Action No.: 10-4024 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

Presently before the Court is an appeal by Anna M. Ruiz (hereinafter "Claimant") seeking review of the final decision by Administrative Law Judge ("ALJ") Richard L. De Steno denying her application for Supplemental Security Income Benefits ("SSI"). The Court has considered the submissions made in support of and in opposition to the instant appeal and, pursuant to Federal Rule of Civil Procedure 78, decides this matter without oral argument. For the reasons set forth below, the Court affirms ALJ De Steno's decision.

**I.    BACKGROUND**

On January 23, 2007, Claimant filed an application for Social Security Income Benefits under Title XVI of the Social Security Act, alleging disability beginning September 1, 2006. This claim was denied initially and again upon reconsideration. On June 23, 2009, a hearing was held before ALJ De Steno, who determined that Claimant was not disabled under section

1614(a)(3)(A) of the Act.  On June 4, 2010, the Appeals Council denied Claimant's request for review.  Claimant has appealed this decision.

Claimant, Anna M. Ruiz, was born on February 21, 1959.  (R. at 31.)  She has a fifth-grade education and is unable to read, write, or speak English.  (Id. at 32.)  She lives with her son and husband and does not perform household chores.  (Id. at 38-39.)  She has not worked since becoming pregnant in December 1988 and claims she is unable to do so now because of heart and lower back problems. (Id. at 103.)

On August 23, 2006, Claimant visited her physician, Dr. Gregorio Guillen, M.D., complaining of heart palpitations.  (R. at 186.)  Dr. Guillen performed an electrocardiogram which showed normal tracings.  (Id.)  Two days later Claimant returned because of lower back pain.  (Id. at 184.)  Dr. Guillen performed a sacrum/lumbar spine examination which revealed moderate spinal curvature.  (Id.)  On September 27, 2006, x-rays confirmed Claimant's lumbago was due to scoliosis and showed that Claimant suffered from osteopenia with a moderate risk of fracture.  (Id. at 179.)  Claimant reported improvement in her palpitations.  (Id.)  Naproxen and Pyridium were prescribed.  (Id.)

On December 21, 2006, Dr. Guillen wrote a letter stating that Claimant suffered from cardiac dysrhythmias and exacerbation of lower back pain.  (R. at 178.)  He continued that Claimant was permanently disabled and unable to obtain and maintain gainful employment.  (Id.)  Dr. Guillen provided no further explanation for his conclusion.  (Id.)

On January 30, 2007, Claimant returned to Dr. Guillen claiming her lower back pain had worsened. (R. at 177.)  Pain was radiating to her lower extremities, resulting in numbness and tingling.  (Id.)  Dr. Guillen noted that Claimant had a history of a heart murmur and that her heart

palpitations had improved. (Id.) A physical exam revealed that Claimant had forward flexion of 50 degrees with pain; paralumbar muscle spasms; and positive straight leg raises at 45 degrees for both legs. (Id.) Claimant's lumbago was the same, and an MRI of the lumbar spine was recommended because of the signs of radiculopathy. (Id.) In addition, Claimant was referred to a psychologist. An echocardiogram performed on February 2, 2007, by Dr. Shaukat Chaudhery, M.D., F.A.C.C., showed normal results. (Id. at 176.)

In March 2007, Claimant returned to Dr. Guillen with lower back pain. (R. at 170). She had not yet taken the Naproxen prescribed in September or used the psychological referral. (Id.) An echocardiogram was completely normal, and Claimant's palpitations were listed as occasional. (Id.) Dr. Guillen indicated that the lumbago had not changed, and Claimant resisted medicine for it. (Id.) Dr. Guillen advised Claimant to avoid caffeine and over-the-counter decongestants to prevent a recurrence of her palpitations. (Id.)

Claimant returned to Dr. Guillen in May 2007 complaining of weight gain, hot flashes, nausea and occasional vomiting, periods of loose bowel movements, and colicky left abdominal pain. (R. at 168.) Dr. Guillen noted that Claimant's lumbago had improved and that she had occasional palpitations. (Id.) He prescribed Levsin and referred endocrinology and gastrointestinal visits to determine the cause of her weight and abdominal issues. (Id.)

In August 2007 Claimant visited Dr. Prem Nandiwada, M.D. because of intermittent epigastric pain. (R. at 199.) Claimant indicated that pain radiated to her periumbilical area but was improving with Antacid and H2 Blockers. (Id.) Dr. Nandiwada's notes show that Claimant did not suffer from nausea, vomiting, diarrhea, or constipation. (Id.) In addition, she had no neck or back pain, and the results from her physical examination were normal. (Id.) Dr.

Nandiwada recommended an upper endoscopy if Claimant's abdominal symptoms did not improve. (Id. at 201.)

On September 19, 2007, per the request of the Commissioner of Social Security, Claimant underwent a physical examination by Dr. Francky Merlin, M.D.. (Def. br. at 4; R. at 158.) Claimant told Dr. Merlin that she had suffered from neck pain for 20 years and that it radiated to both her shoulders, though it was not associated with numbness or weakness of the upper extremities. (R. at 158.) Claimant explained that her pain was intermittent and was brought on by activities. (Id.) She also indicated that she could walk three blocks, take care of her personal hygiene, and that her husband helped with household chores. (Id.) Dr. Merlin noted that Claimant had abdominal pain and a history of osteoporosis. (Id.) His exam, including an echocardiogram, showed normal results. In addition, Claimant was able to flex her spine forward zero to 90 degrees; squat and walk on her heels and toes; and demonstrate a bilateral range of motion of zero to 150 degrees in her knees. (Id. at 159.) Dr. Merlin diagnosed Claimant with neck pain and said she needed to follow up with an orthopedist. (Id. at 159-160.)

On September 28, 2007, a state agency physician reviewed Claimant's medical records and determined her condition was only causing a slight impact on her work-related function. (R. at 165.) Consequently, her impairment was not considered severe, and her claim was denied. (Id. at 165-166.) This decision was later confirmed on February 14, 2008, when a second state agency physician evaluated Claimant's records. (Id. at 188.)

Claimant returned to Dr. Guillen in December 2007 because of slight weight gain. (R. at 166.) Claimant indicated that she still suffered from back pain and that it was aggravated by standing or walking. (Id.) She also said that she had difficulty with her household chores. (Id.)

A physical exam showed that Claimant had forward flexion of 60 degrees with pain; paralumbar muscle spasms; and positive straight leg raises of 45 degrees in both legs. (Id.). Dr. Guillen prescribed Ibuprofen tablets and a follow-up visit four months later. (Id.)

In April 2008 Claimant visited Dr. Nandiwada complaining of heartburn. (R. at 197.) She said her symptoms were increasing in frequency, though they were improving with Antacids and H2 Blockers. (Id.) Dr. Nandiwada's notes indicate that Claimant had abdominal tenderness and suffered from nausea and vomiting. He recommended an upper endoscopy and esophagogastroduodenoscopy (EGD) if symptoms persisted. (Id. at 198.) Claimant had an EGD on May 19, 2008. (Id. at 196.) It showed that she had a hiatal hernia in her esophagus; grade B esophagitis; bile gastritis; and multiple erosions and ulcerations. (Id. at 196.) Dr. Nandiwada prescribed Nexium and a follow-up visit in two weeks. (Id.) In June Dr. Nandiwada prescribed Prevacid and recommended a gallbladder ultrasonography, which was performed in July and showed unremarkable results. (Id. at 194.) Claimant returned to Dr. Nandiwada in October because she had run out of medication. (Id. at 192.) The doctor indicated Claimant still had gastritis and gave her a new prescription for Pravacid along with instructions on her diet. (Id.)

In January 2009 Claimant visited Dr. Guillen. (R. at 206.) She indicated that her weight gain had been resolved, but her lumbago was not relieved. (Id.). In addition, she was unable to take NSAIDs or Actonel because of her esophagitis, gastritis, and erosions. She also complained of neck pains and panic attacks. (Id.) Dr. Guillen noted that Claimant's mood was depressed; she had paravertebral tenderness in her neck; decreased range of motion; forward flexion of 60 degrees; paralumbar muscle spasms; and straight leg raises at 50 degrees in both legs. He diagnosed recurrent lumbago; cervicalgia; osteopenia; and dizziness and giddiness. (Id.) In addition, he discontinued Ibuprofen, prescribed Boniva, and ordered lab tests. (Id.)

In accordance with Dr. Guillen's instructions, Claimant had a scan of her cervical spine in January 2009. (R. at 205.) It showed normal results. (Id.) In February she underwent a DXA Bone Densitometry Report that confirmed she was osteopenic with a moderate risk of fracture. (Id. at 203-204.)

One June 23, 2009, a hearing was held before ALJ De Steno. (R. at 22.) Counsel for Claimant moved for the judge to recuse himself because he had been found to create the appearance of bias against counsel's firm in a prior case. (Id. at 3) *See* Robinson v. Comm'r of Soc. Sec., No. 07-3455, 2009 WL 872030 at *1 (D.N.J. March 30, 2009). In Robinson, the District Court reviewed the record and found "several instances in which ALJ De Steno's conduct and discourse raise[d] the specter of particular bias." Id. at *4. Specifically, the Court highlighted ALJ's "outright hostility" towards plaintiff's counsel and towards the process of remand in general. *See* id. at *4, 7. In addition, the Court took issue with the fact that the ALJ showed a troubling disregard for the "paucity of the record in [the] case" by asking the vocational expert only one hypothetical question. *See* id. at *5. Lastly, the Court found that ALJ De Steno's comments that he would never recuse himself and that he considered the claimant's motion for recusal "a colossal waste of time" brought with them the "onus of prejudice." Id. at *6.

ALJ De Steno denied Claimant's motion for recusal and continued with the hearing. (R. at 27.) He stated that the District Judge's finding of an appearance of bias was "a ruling that was limited to the specifics of [Robinson]," and he did not "see any reasonable interpretation of the ruling . . . that extends beyond the parameters of that case." (R. at 27.) Claimant then testified that she suffers from lower back pain, osteoporosis, scoliosis, migraines, cardiac dysrhythmias, and ulcers. (Id. at 32-36.) In addition, she has panic attacks for which she seeks treatment at

Sunrise Medical Health Center.[1] (Id. at 34.) Because of these conditions, Claimant stated she is unable to bend or stoop to pick up or carry anything heavy; cannot stand for more than five or 10 minutes; cannot sit for a long time; and cannot walk for more than a block. (Id. at 37-38.) No other witnesses testified. (Id. at 23.)

After conducting a five-step analysis of Ms. Ruiz's claim, the ALJ concluded that she had a residual functional capacity for the full range of medium work. (R. at 17.) He noted that she had severe impairments involving lumbago, cardiac arrhythmias, and osteopenia, but these were not severe enough to meet the Social Security Regulations' "Listing of Impairments." (Id. at 16.) Finally, he found that there was work in the national economy that Claimant could perform and therefore she was not disabled. (Id. at 19-20.)

## II.   LEGAL STANDARD

### A.  Determining Disability

To receive Social Security Income Benefits a claimant must show that he is disabled by demonstrating that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's physical or mental impairments must be "of such a severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the  national economy . . . ." Id. at § 1382c(a)(3)(B). Impairments that affect the claimant's "ability to meet the strength demands of jobs" with respect

---

[1] There is no documentation of her treatment at this facility in the record.

to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations. 20 C.F.R. § 404.1569a; see also Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000). All other impairments are considered nonexertional. Id. Decisions regarding disability will be made individually and will be based on evidence adduced at a hearing. See Sykes v. Apfel, 228 F.3d 259, 262 (3d. Cir. 2000) (citing Heckler v. Campbell, 461U.S. 458, 467 (1983)).

The Social Security Administration follows a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The evaluation will continue through each step unless it can be determined, at any point, that the claimant is or is not disabled. Id. at § 404.1520(a)(4). At the first step, claimant's work activity is assessed. Id. at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity he will be found not disabled and the analysis will stop, regardless of claimant's medical condition, age, education, or work experience. Id. at § 404.1520(b). If the claimant is not involved in substantial gainful activity, the Commissioner must determine at the second step whether the claimant's medical impairments are severe. Id. at § 4041520(a)(4)(ii). Medical impairments that are not severe will leave the claimant ineligible for benefits. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).

At the third step, the ALJ must compare claimant's severe impairments to those provided in the Social Security Regulations' "Listings of Impairments." Id. at § 4041520(a)(4)(iii); 20 C.F.R. § 404, Subpart P, Appendix 1; see also Burnett, 220 F.3d at 119. Impairments that are the same or equivalent to those listed will result in an automatic finding of disability. 20 C.F.R. § 404.1520(d); see also Burnett, 220 F.3d at 119. At this point, it is incumbent upon the ALJ to set forth the reasons for his findings. See Burnett, 220 F.3d at 119. Simple conclusory remarks will not be sufficient and will leave his decision "beyond meaningful judicial review." Id.

If the claimant's impairments do not meet the criteria of those found in the "Listings of Impairments," the evaluation will proceed to the fourth step. There, the ALJ must assess claimant's residual functional capacity to determine whether he is capable of performing his past work. See Burnett, 220 F.3d at 120. This involves three substeps: "(1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work." Id.

If the claimant cannot perform his past work, the analysis proceeds to the fifth and last step. The ALJ must then determine whether there is any other work in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). For claimants with exertional limitations, the ALJ may rely on medical-vocational guidelines ("grids") that establish the types and numbers of jobs that exist. See Sykes, 228 F.3d at 263. For individuals with nonexertional limitations, the ALJ must consider evidence beyond the grids to decide whether the claimant's nonexertional impairments diminish his residual functional capacity. Id. at 270, 273-274. During this final step, the burden lies with the government to show that the claimant is not disabled by demonstrating that he can perform other work in the economy. Id. at 263.

### B. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" but must give deference to the administrative findings. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992); see also Grober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the

conclusions reached are rational" and supported by substantial evidence. See Grober, 574 F.2d at 776; see also 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where the Commissioner has rejected competent medical evidence, the ALJ must adequately explain his reasons and provide the rationale behind his decision. See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). Given the totality of the evidence, including objective medical facts, diagnoses and medical opinions, and subjective evidence of pain, the reviewing court must determine whether the Commissioner's decision is adequately supported. See Curtain v. Harris, 508 F. Sup. 791, 793 (D.N.J. 1981).

When evaluating a claim of bias, the Court must consider the ALJ's conduct and not the content of the evidence at the hearing. *See* Robinson, 2009 WL 872030 at *3 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). ALJs play active roles in social security cases, and therefore a claimant's right to appear before an unbiased decision-maker is particularly important. *See* Hummel v. Heckler, 736 F.2d 91, 93 (3d Cir. 1984). As a result, "even if 'the record was totally devoid of [evidence supporting the finding of disability], the bias of an [ALJ] might still be a ground for setting aside a determination adverse to the claimant.'" Robinson, 2009 WL 872030 at *3 (quoting Hummel, 736 F.2d at 95).

### III.   DISCUSSION

#### A. Summary of ALJ's Findings

ALJ De Steno applied each of the five steps in his evaluation of Ms. Ruiz's claim. At step one, he found that Claimant had not engaged in substantial gainful activity since January 23,

2007. (R. at 16). At step two, he concluded that Claimant had severe impairments involving lumbago, cardiac arrhythmias, and osteopenia. Id. At step three, he determined that Claimant did not have an impairment or combination of impairments that meets or medically equals any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix I. Id. Specifically, Claimant's impairments failed to meet the requirements associated with sections 1.04 (lumbar spine); 4.05 (recurrent arrhythmias); 4.00 (cardiovascular listings); and 1.00 (musculoskeletal system). Id. Regarding the Claimant's lumbago, ALJ De Steno found that the evidence failed to demonstrate any of the spinal disorders listed as examples of musculoskeletal impairments in Section 1.01, specifically "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture, resulting in compromise of a nerve root (including the cauda equine) or the spinal cord." Id. In addition, ALJ found no evidence to satisfy the requirements of spinal disorders in subsections A (nerve root compression), B (spinal arachnoiditis), or C (lumbar spinal stenosis). Id. He did not state how Claimant's other impairments failed to meet their respective requirements.

At step four, after careful consideration of the entire record, ALJ De Steno determined that Claimant had the residual functional capacity for the full range of medium work, including "lifting and carrying objects weighing up to 50 pounds; frequently lifting and carrying objects weighing up to 25 pounds; standing, walking, and sitting up to six hours in an eight-hour day; [and] pushing and pulling arm and leg controls." (R. at 17.) He also found that Claimant did not have any significant nonexertional limitations. Id. In reaching his conclusion, ALJ De Steno stated that, though "[C]laimant's medically determinable impairments could reasonably be expected to cause some limited degree of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these statements are largely not credible." Id.

Evidence of periodic back pain and non-aggressive treatment demonstrated the "minimal severity" of Claimant's symptoms of lumbago.  Regarding Claimant's osteoporosis and arrhythmias, bone density and echocardiogram tests showed only moderate and unremarkable results, respectively.  Id. at 18.  ALJ De Steno found that the results from diagnostic testing for Claimant's abdominal pain were similarly mild.  In addition, the complaint lacked an ongoing history.  Id.  Lastly, though Claimant testified about panic attacks and migraines, ALJ De Steno found no clinical or other objectively verifiable evidence to substantiate her claims.  Id. at 19.

No weight was accorded to Dr. Guillen's 2006 statement that Claimant was permanently disabled and unable to work.  (R. at 18.)  ALJ De Steno found this determination was unsupported by objective medical evidence and without any explanation.  Id.  In addition, it was contradicted by Dr. Guillen's earlier findings of mild and recurrent lower back pain and "diagnostically unsubstantiated complaints of heart palpitations."  Id.  ALJ De Steno relied instead on the 2007 physical examination by a state agency examiner, which showed that Claimant had "appropriate affect and behavior, normal lung and heart functioning, normal use of all her extremities, . . . [and] diminished range of motion of the spine with tenderness noted in the neck . . . ."  Id.  X-rays also showed moderate thoracic scoliosis but no acute disease.  Id.

ALJ De Steno concluded his five-step analysis by determining that there are jobs in the national economy that the Claimant can perform.  (R. at 19.)  He reached this decision by considering Claimant's "residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines."  Id. at 19-20.  With a residual functional capacity for the full range of medium work, ALJ De Steno determined that Claimant should be found "not disabled" in accordance with Medical-Vocational Rules 203.25 and 203.18.  Id. at 20.

**B. Analysis**

Claimant disputes ALJ De Steno's determination of her residual functional capacity and asserts it was not sufficiently explained. Further, Claimant argues that ALJ De Steno is biased against Claimant's counsel and requests that the case be either reversed or remanded to another judge.

1. <u>ALJ's Determination of RFC is Supported by Substantial Evidence</u>

The first question before the Court is whether ALJ De Steno properly reached his conclusion that Claimant has capacity for the full range of medium work. When making a decision regarding a claimant's residual functional capacity, the ALJ must consider the entire record and provide "a clear and satisfactory explication of the basis on which [his decision] rests." <u>See</u> <u>Burnett</u>, 220 F.3d at 121; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). If the ALJ's findings are supported by substantial evidence, the reviewing court is bound to uphold his decision, even if the court would have decided the factual inquiry differently. <u>See</u> <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001.)

ALJ De Steno reviewed the record thoroughly and provided an adequate explanation for his decision. He considered Claimant's testimony, diagnostic test results, doctors' notes, course of treatment, and physical examinations in his discussion of Claimant's multiple impairments. (R. at 16-19.) As he made clear, Claimant's "lower back symptoms were reported as periodic and not ongoing, and the extent of [C]laimant's limitations and complaints are not supported by objective diagnostic findings." (<u>Id</u>. at 18.) Indeed medical records from Drs. Guillen, Nandiwada, and Merlin show that Claimant's back pain fluctuated from periods of aggravation to improvement to nonexistence. (<u>Id</u>. at 177, 168, 199, 158.) Furthermore, diagnostic tests and physical examinations reflected normal results or only moderate limitations of her mobility. (<u>Id</u>.

at 129. 159, 203-205.)  As ALJ De Steno pointed out, the non-aggressive treatment of Claimant's lumbago underscored the minimal severity of her condition.  (Id. at 18.)

Diagnostic results for Claimant's other impairments were similarly mild.  Bone densitometry scans from both September 2006 and February 2009 revealed that Claimant suffers from osteopenia with a moderate risk of fracture.  (R. at 179, 203-205.)  Physical examinations and x-rays of Claimant's scoliosis indicated that she has only moderate spinal curvature and offered no evidence that her case is severe.  (Id. at 184, 205.)  Regarding Claimant's cardiac issues, echocardiograms performed since 2006 have all shown normal results.  (Id. at 186, 176, 170, 158.)  As ALJ De Steno correctly pointed out, despite a noted history of arrhythmia, there is no diagnostic evidence of Claimant's palpitations in the record.  (Id. at 19.)

ALJ De Steno also considered Claimant's abdominal pains, panic attacks, and migraines in his decision.  Regarding the stomach ailments, the ALJ noted that examinations performed in 2007 in response to nausea, pain, and bloating found only mild chronic inflammation, and Claimant's later diagnosis of hiatal hernia and esophagitis reflected a "new complaint without an ongoing past history."  (R. at 18.)  With respect to panic attacks and migraines, the ALJ found that Claimant provided no "clinical or other objectively verifiable medical evidence to support [her] claims." (R. at 19.)  Indeed there is no documentation of Claimant's treatment at Sunrise Mental Health Center, despite the fact that the record was held open for three weeks following the hearing for the express purpose of allowing Claimant to provide such proof.  (R. at 39, 19.)

Claimant takes issue with the fact that ALJ De Steno accorded no weight to Dr. Guillen's December 2006 letter declaring Claimant disabled, however ALJ De Steno properly explained his reasons for dismissing the evidence.  A treating physician's opinion is only accorded controlling weight when it is well-supported by medically acceptable clinical and laboratory

techniques and is not inconsistent with other substantial evidence in the record. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 198 (3d Cir. 2008) (quoting 20 C.F.R § 404.1527(d)(2)). Furthermore, "treating source opinions on issues that are reserved for the Commissioner," like whether an individual is disabled, "are never entitled to controlling weight or special significance." Social Security Ruling 96-5p. ALJ De Steno reviewed Dr. Guillen's two-sentence letter and found that it was unsupported by any evidence in the record, including the doctor's own treatment notes. (R. at 18-19.) Furthermore, other physicians, including the state agency examiner, determined that Claimant only suffered from moderate impairments. (Id. at 18.) ALJ De Steno's opinion made clear that Dr. Guillen's letter was contradicted by other parts of the record and thus he properly dispensed with the evidence.

The ALJ's finding that Claimant has residual functional capacity for medium work reflects a review of the entire record and includes an explanation of the substantial evidence on which it is based. As such this Court is bound to uphold ALJ De Steno's decision that Claimant is not disabled.

2. Claimant Fails to Establish Bias

The second question before the Court concerns ALJ De Steno's alleged bias against Claimant and her counsel. As the Third Circuit has held, claimants are entitled to have evidence evaluated by an unbiased adjudicator. See Hummel, 736 F.2d at 95. Indeed, the right to an impartial decision-maker is even more pronounced in administrative proceedings given the absence of procedural safeguards normally available in judicial matters. See Ventura, 55 F.3d at 903. Despite the acute need for fairness, hearing officers are afforded a presumption of impartiality unless a claimant can demonstrate that they have "displayed deep-seated and

unequivocal antagonism that would render fair judgment impossible."[2] See Liteky v. United States, 510 U.S. 540, 556 (1994).

Claimant attempts to create an overall appearance of bias by citing quotations from other cases in which ALJ De Steno has been involved, however she neglects to present evidence regarding his partiality in the present matter. To be granted a remand, a claimant must establish bias in her own case and not simply rely on examples from other proceedings. See Valenti v. Comm'r of Soc. Sec., 373 Fed. Appx. 255, 258-259 (3d Cir. 2010) (affirming District Court's judgment, in part, because claimant did not cite evidence from the record to indicate bias or misconduct.) When the court has remanded a case, there has been evidence of coercion, intimidation, or other misconduct on the part of the original ALJ. See Ventura, 55 F.3d at 902. Indeed in such cases the evidence has clearly demonstrated that claimant was denied a full and fair hearing because of the judge's bias. See Hummel, 736 F.2d at 95. Claimant points to nothing in the present case to establish the "deep-seated and unequivocal antagonism" necessary for her claim. She offers only the "counter-intuitive" finding of her residual capacity as proof of ALJ De Steno's bias, but this, coupled with excerpts from other proceedings, is not enough to sustain her burden of proof.

Though this Court is sensitive to the District Court's finding in Robinson, it must evaluate Claimant's allegation of bias by reviewing the ALJ's conduct at her particular hearing. After reviewing the transcript, it does not appear that ALJ De Steno displayed hostility or deep-

---

[2] This standard applies to cases in which recusal is based on "intrajudicial factors," bias relating to facts introduced or events occurring in the course of current or prior proceedings. See Stringer v. Astrue, 252 Fed. Appx. 645, 647-648 (5th Cir. 2007). Though not relevant here, recusal can also be based on "extrajudicial factors," bias based on family relationships or other extrajudicial influences. See id.

seated antagonism towards counsel that would suggest bias or the appearance thereof. As such, this Court dismisses the claim of bias and denies the request for remand.

## IV. CONCLUSION

For the reasons discussed above, ALJ De Steno's decision that Claimant was not disabled within the meaning of the Social Security Act is hereby affirmed. An appropriate order accompanies this opinion.

DATED: July 12, 2011                                                                s/ Jose L. Linares
                                                                                                    JOSE L. LINARES
                                                                                                    U.S. DISTRICT JUDGE